IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WASHINGTON COUNTY FAMILY
ENTERTAINMENT, LLC,

    Plaintiff,

    v.

RNN ENTERTAINMENT INC.; ROMEL
MARCUS; DERRICK ROBINSON; BODIE
ENTERTAINMENT, INC. a/k/a THE BODIE
GROUP; GUSTAV HENINGBURG II;
JAMES G. EVANS; FRANCESCO CINA;
MING AND SONS, LLC; GOODLIFE
ENTERTAINMENT L.L.C.; JOHN
WARDLOW, JR.; THE RTD GROUP, LLC;
OLUREMI DARAMOLA; SELOMON
GOITOM; and JOHN AND JANE DOES 1
through 10,

    Defendants.

No. 2:17-cv-807

Magistrate Judge Cynthia Reed Eddy

## AMENDED COMPLAINT

Plaintiff Washington County Family Entertainment, LLC ("WCFE"), by its undersigned counsel, files this Amended Complaint against Defendants RNN Entertainment Inc., Romel Marcus, Derrick Robinson, Bodie Entertainment, Inc. a/k/a The Bodie Group, Gustav Heningburg II, James G. Evans, Francesco Cina, Ming and Sons, LLC, Goodlife Entertainment L.L.C., John Wardlow, Jr., The RTD Group, LLC, Oluremi Daramola, Selomon Goitom, and John and Jane Does 1 through 10.

## PARTIES

1.    WCFE is a Pennsylvania limited liability company with its principal place of business located at 1 Washington Federal Way, Washington, Pennsylvania 15301. The sole member of WCFE is Sports/Facility, LLC, a Pennsylvania limited liability company with its

principal place of business located at 1 Washington Federal Way, Washington, Pennsylvania 15301. The members of Sports/Facility, LLC are all individuals who are citizens of the Commonwealth of Pennsylvania.

2. Defendant RNN Entertainment Inc. ("RNN") is a dissolved New York corporation with its principal place of business located at 570 Lefferts Avenue, Apartment 4E, Brooklyn, New York 11203.

3. Defendant Romel Marcus a/k/a Abdur-Raheem ("Marcus") is an adult individual and citizen of the State of New York residing at 570 Lefferts Avenue, Apartment 4E, Brooklyn, New York 11203.

4. Defendant Derrick Robinson a/k/a Derekh-Ha Yashar Uriyah ("Robinson") is an adult individual and, upon information and belief, not a citizen of the Commonwealth of Pennsylvania.

5. Defendant Bodie Entertainment, Inc. a/k/a The Bodie Group ("Bodie") is a New Jersey corporation with its principal place of business located at 71 South Orange Avenue, Suite 318, South Orange, New Jersey 07079.

6. Defendant Gustav Heningburg II ("Heningburg") is an adult individual and citizen of the State of New Jersey residing at 27 Burnett Avenue, Maplewood, New Jersey 07040.

7. Defendant James G. Evans ("Evans") is an adult individual and citizen of the State of New York.

8. Defendant Francesco Cina ("Cina") is an adult individual and a citizen of the State of New York residing at 44 Garibaldi Avenue, Staten Island, New York 10306.

9. Defendant Ming and Sons, LLC ("Ming") is a New York limited liability company with its principal place of business located at 565 Lefferts Avenue, Brooklyn, New York 11203.

Upon information and belief, the member(s) of Ming are not citizens of the Commonwealth of Pennsylvania.

10. Defendant Goodlife Entertainment L.L.C. ("Goodlife") is a Nevada limited liability company with its principal place of business located at 10860 Dornoch Castle Street, Las Vegas, Nevada 89141. Upon information and belief, the sole and managing member of Goodlife is Defendant John Wardlow, Jr.

11. Defendant John Wardlow, Jr. ("Wardlow") is an adult individual and citizen of the State of Nevada residing at 10860 Dornoch Castle Street, Las Vegas, Nevada 89141.

12. Defendant The RTD Group, LLC ("RTD") is a California limited liability company with its principal place of business located at 334 Main Street, Suite 1402, Los Angeles, California 90013. Upon information and belief, Defendant Oluremi Daramola is the sole and managing member of RTD.

13. Defendant Oluremi Daramola a/k/a Remi T. Daramola ("Daramola") is an adult individual and citizen of the State of California residing at 5119 Maplewood Avenue, #313, Los Angeles, California 90004.

14. Defendant Selomon Goitom ("Goitom") is an adult individual and citizen of the State of California residing at 2600 Northcoast Street #21G, Santa Rosa, California 95403.

15. Upon information and belief, John and Jane Does 1 through 10 are corporations, other legal entities, individuals and/or groups of individuals, the names and addresses of which currently are unknown, who conspired with and/or aided and abetted RNN, Marcus, Robinson, Bodie, Heningburg, Evans, Cina, Ming, Goodlife, Wardlow, RTD, Daramola and Goitom.

16. Unless separately identified, RNN, Marcus, Robinson, Bodie, Heningburg, Evans, Cina, Ming, Goodlife, Wardlow, RTD, Daramola, Goitom, and John and Jane Does 1 through 10 will be referred to herein as the "Co-Conspirators."

17. The Co-Conspirators are affiliated persons and entities who hold themselves out as authorized music artist booking agents, concert promoters and facilitators, intermediaries, and live event producers. The business association among and between the Co-Conspirators will be referred to herein as the "Fraudulent Enterprise."

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964.

19. This Court also has diversity jurisdiction over the claims in this action arising under state law pursuant to 28 U.S.C. § 1332 because the members of WCFE and Sports/Facility, LLC are citizens of Pennsylvania and their citizenship is completely diverse from the Co-Conspirators and their members, none of whom are citizens of Pennsylvania, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, as they are so related to claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

20. The Court has personal jurisdiction over the Co-Conspirators pursuant to the principles of due process and the Pennsylvania long-arm statute, 42 Pa. C.S.A. § 5301, *et seq.*, because of their transaction of business within Pennsylvania both specifically in relation to the facts giving rise to this action and during the general course of their affairs.

21.     A substantial part of the events giving rise to WCFE's claims occurred within the judicial district of the United States District Court for the Western District of Pennsylvania. Accordingly, venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) and 18 U.S.C. § 1965.

## FACTUAL BACKGROUND

22.     WCFE is the master tenant of a sporting event and entertainment facility known as Wild Things Park (the "Park") located at 1 Washington Federal Way, Washington, Pennsylvania 15301.

23.     Among other live events, WCFE hosts music artists to perform concerts at the Park.

24.     In early February 2017, Evans, Cina and Heningburg met with WCFE in Allegheny and Washington Counties, Pennsylvania, to propose hosting concerts at the Park which they would book, promote, and produce.

25.     Heningburg represented to WCFE that he was a well-connected concert producer and a booking agent for numerous artists whom Heningburg would be able to directly secure to perform the shows at the Park. At the meeting, Heningburg specifically proposed the performances of Wiz Khalifa and Lil Uzi Vert at the Park. Heningburg further represented that he had already spoken with Wiz Khalifa who, Heningburg said, wanted to do the show as a "homecoming."

26.     Evans and Cina represented to WCFE that they were interested in facilitating the concerts as a business development opportunity and to build "sweat equity," and would be paid for their services if, and only if, the concerts were profitable. Evans also agreed to act as the point of contact between WCFE and Cina and Heningburg, and later communicated on behalf of all the Co-Conspirators.

27. Cina informed WCFE that he had worked extensively with Heningburg in the past, and promised that he would handle the promotional work for the concerts and purportedly relocate to Pittsburgh for an extended period to facilitate his work.

28. Heningburg requested a $75,000.00 fee, which he represented would cover all costs associated with securing the artists, promoting the concerts, and supplying production services on the day of the show.

**The Fraudulent Wiz Khalifa and Lil Uzi Vert Scheme and Related Wire Transfers**

29. On February 16, 2017, WCFE received from Evans via email a purported "Artist Performance Agreement" for the Wiz Khalifa and Lil Uzi Vert concert at the Park on June 10, 2017.

30. Also on February 16, 2017, WCFE received from Bodie an invoice in the amount of $75,000.00 for its services as described above and relating to the Wiz Khalifa and Lil Uzi Vert concert.

31. WCFE wired Bodie the sum of $37,500.00 on February 21, 2017 to cover one-half of the fee.

32. Though Heningburg protested, WCFE responded that the remaining $37,500.00 would be paid on the day of the show, provided all services were rendered.

33. In connection with the purported Wiz Khalifa/Lil Uzi Vert Artist Performance Agreement memorializing the first set of fraudulent occurrences of the Fraudulent Enterprise, RNN, Marcus, and Robinson represented to WCFE that they were the designated agents and representatives for Wiz Khalifa and Lil Uzi Vert, and that they had the full right, power and authority to enter into the agreement and to cause the artists to perform all the services required

under the agreement, including, without limitation, their appearance and performance at the Park on June 10, 2017.

34. At or around this time, and because they were in fact unauthorized to book Lil Uzi Vert for the June 10, 2017 concert despite their repeated representations to WCFE to the contrary, RNN, Marcus and/or Robinson enlisted Wardlow and Goodlife to participate in, aid and abet, and conceal the Fraudulent Enterprise. Upon information and belief, Wardlow and Goodlife perpetuated the fraudulent scheme by becoming actively involved in the façade that Liz Uzi Vert already had been booked to appear at the Park on June 10, 2017. In exchange for their participation in and furtherance of the fraudulent scheme, part of the deposit monies tendered by WCFE were diverted to Wardlow and Goodlife by RNN, Marcus, Robinson and/or Ming.

35. Also, during this time frame, Evans represented to WCFE that he had been in contact with the artists' management concerning the purported Wiz Khalifa/Lil Uzi Vert Artist Performance Agreement and related technical riders, the production costs for the June 10, 2017 concert, and wire account information. Evans also informed WCFE that he had spoken with Wiz Khalifa directly regarding the June 10, 2017 concert.

36. On February 23, 2017, WCFE wired to the Co-Conspirators (via Ming) the sum of $111,500.00 as a deposit for the Wiz Khalifa and Lil Uzi Vert concert scheduled for June 10, 2017; WCFE was led to believe and understood that this payment would be forwarded in its entirety to the artists for their appearances at the Park on June 10, 2017.

37. However, upon information and belief, the $111,500.00 tendered by WCFE was instead fraudulently converted by and distributed among and between the Co-Conspirators.

38. Later in February and March 2017, the Co-Conspirators repeatedly assured WCFE that they were in frequent contact with Wiz Khalifa and Lil Uzi Vert's management concerning the promotion, marketing and production of the June 10, 2017 concert.

**The Fraudulent Migos and Skrillex Scheme and Related Wire Transfers**

39. In early March 2017, Evans, Cina, Heningburg, RNN, Marcus and Robinson represented to WCFE that they had a special relationship with Migos and had knowledge of an agreement between Migos and Skrillex under which these artists agreed to perform concerts together.

40. Evans, Cina, Heningburg, RNN, Marcus and Robinson further stated to WCFE that both Migos and Skrillex agreed to perform at the Park on August 12, 2017, and that they would be able to produce significant sponsorships for the concert, as well as an agreement to live stream the show.

41. On March 6, 2017, WCFE received from Evans via email a purported "Artist Performance Agreement" for a Migos and Skrillex concert at the Park on August 12, 2017.

42. In connection with the purported Migos/Skrillex Artist Performance Agreement memorializing the second set of fraudulent occurrences of the Fraudulent Enterprise, RNN, Marcus and Robinson represented to WCFE that they were the designated agents and representatives for Migos and Skrillex, and that they had the full right, power and authority to enter into and perform the agreement and to cause the artists to perform all the services required under the agreement, including, without limitation, their appearance and performance at the Park on August 12, 2017.

43. Bodie then submitted an invoice to WCFE and WCFE wired Bodie the sum of $37,500.00 on March 9, 2017, with the understanding that the remaining $37,500.00 would be paid on the day of the show, provided all services were rendered.

44. On March 9, 2017, WCFE wired to the Co-Conspirators (via Ming) the sum of $175,000.00 as a deposit for the Migos and Skrillex concert at the Park on August 12, 2017; WCFE was led to believe and understood at the time that this payment would be forwarded in its entirety to the artists for their appearance at the Park on August 12, 2017.

45. However, upon information and belief, the $175,000.00 tendered by WCFE was instead converted by and distributed among and between the Co-Conspirators.

46. Reasonably relying upon Evans, Cina, Heningburg, RNN, Marcus, and Robinson's numerous representations, reasonably believing that it had secured the artists to perform, and having tendered the required deposits, WCFE moved forward with preparations for the June 10 and August 12, 2017 concerts at the Park with substantial expenditures of time and money.

47. As WCFE was preparing for the shows, Evans, Cina, Heningburg, Marcus, and Robinson repeatedly assured WCFE that Wiz Khalifa, Lil Uzi Vert, Migos and Skrillex were booked for the scheduled concerts at the Park.

48. In February and March 2017, Evans, Cina, RNN, Marcus and Robinson led WCFE to believe, and WCFE reasonably believed, that they were actively marketing, promoting and otherwise preparing for the June 10 and August 12, 2017 concerts with the artists' full knowledge and authority.

49. On March 14, 2017, after tickets were on sale, WCFE was advised by WME Entertainment, LLC ("WME") that it was the sole and exclusive agent for Wiz Khalifa and that

9

neither WME nor Wiz Khalifa had authorized the June 10, 2017 engagement and that the artist would not be appearing for the scheduled concert at the Park.

50. The Co-Conspirators explained to WCFE that it had an agreement for Wiz Khalifa's performance at the Park, and that WME's letter was prompted by its territorial jealousy and lack of a commission on the show. However, WCFE was further advised by the Co-Conspirators that they would obtain a return of its deposit money for the Wiz Khalifa concert because the artist was experiencing certain significant personal issues which put his appearance at the Park in jeopardy. The Co-Conspirators further represented to WCFE that they were in a position to secure a superior replacement act to perform at the Park on June 10, 2017 – G-Eazy.

## The Fraudulent G-Eazy Scheme and Related Wire Transfer, and the Forced Cancellation of the Concerts

51. On or about March 27, 2017, Daramola informed Evans that G-Eazy was available to perform at the Park on June 10, 2017. Evans stated to WCFE that he was negotiating directly with Daramola, who was a member of G-Eazy's management team and authorized to book the artist for a concert on June 10, 2017.

52. On April 4, 2017, Evans furnished artwork purportedly from G-Eazy's "management" and approved by G-Eazy to WCFE for G-Eazy's June 10, 2017 performance at the Park.

53. On April 6, 2017, WCFE received from Evans a purported "Artist Engagement Contract" for the G-Eazy concert at the Park on June 10, 2017, which identified RTD as the purchaser of the talent with the authority to bind G-Eazy. Evans informed WCFE that RTD was Daramola's company and that RTD had authority to enter into the agreement on G-Eazy's behalf.

54. In connection with the purported G-Eazy Artist Engagement Contract memorializing the third set of fraudulent occurrences of the Fraudulent Enterprise, RTD and

10

Daramola represented to WCFE that they had full authority to furnish the entertainment services of G-Eazy and to bind him to an agreement to perform the engagement at the Park on June 10, 2017.

55. After receiving wiring instructions from RTD, WCFE wired to RTD the sum of $75,000.00 on April 10, 2017 as a deposit for the G-Eazy concert at the Park on June 10, 2017. WCFE was led to believe and understood at the time that this payment would be forwarded in its entirety to the artist for his appearance at the Park on June 10, 2017.

56. However, upon information and belief, the $75,000.00 tendered by WCFE was instead fraudulently converted by and distributed among and between the Co-Conspirators.

57. After the wire transfer was tendered, Evans and Cina represented to WCFE that they were actively engaged in creating and pursuing a promotional and marketing timeline for G-Eazy's scheduled performance at the Park on June 10, 2017.

58. During the weekend of April 14 through 16, 2017, and purportedly at the invitation of G-Eazy's management, Cina and Evans travelled to Palm Springs, California allegedly to continue planning G-Eazy's June 10th performance by meeting in person with Daramola, Goitom, G-Eazy and other members of his management team. During the trip, Goitom was identified as a key member of G-Eazy's management personnel.

59. Following the trip, Cina and Evans represented to WCFE that they had met with G-Eazy's management representatives – including Daramola and Goitom – to discuss the scheduled June 10, 2017 performance, and that they repeatedly confirmed that G-Eazy was booked to perform at the Park.

60. On May 4, 2017, Evans forwarded a letter to WCFE which purported to be a letter from The Revels Group, LLC ("TRG"), G-Eazy's talent management firm, allegedly confirming

11

that G-Eazy would not be appearing on June 10, 2017 "due to irreconcilable differences with Management and His Booking agent[.]" Upon information and belief, TRG denies having sent any such letter.

61. WCFE subsequently received information that neither RTD, Daramola, Goitom, nor any of the Co-Conspirators had authority to negotiate or enter into any agreement or other arrangement with WCFE for G-Eazy's performance at the Park.

62. By May 24, 2017, artist approval of the artwork for the Migos and Skrillex concert was required to have been received by WCFE so that tickets for the August 12, 2017 concert could be put on sale. In an effort to obtain the artwork, WCFE contacted Paradigm Talent Agency ("Paradigm"), which advised WCFE that it was the exclusive agent for Skrillex. Paradigm informed WCFE that neither it nor Skrillex had authorized the August 12, 2017 engagement and that the artist would not be appearing for that concert at the Park.

63. WCFE was forced to cancel the June 10 and August 12, 2017 concerts thereby incurring substantial losses and damages.

64. Given the forced cancellation of the concerts purportedly booked, promoted, and marketed by the Co-Conspirators, WCFE demanded from the Co-Conspirators a full refund of all wired monies, which demand has been refused; instead, the Co-Conspirators have advised WCFE that they intend to keep the unrefunded stolen funds and use them as they see fit.

**COUNT I**
**VIOLATIONS OF 18 U.S.C. §§ 1962(c) (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT)**

65. The averments of paragraphs 1 through 64 are incorporated by reference as if fully set forth herein.

66. The Fraudulent Enterprise is an enterprise engaged in, and whose activities affect, interstate commerce.

67. The Co-Conspirators are each employed by or associated with the Fraudulent Enterprise.

68. The Co-Conspirators agreed to and did conduct and participate, directly and indirectly, in the conduct of the Fraudulent Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding WCFE, including, without limitation, via numerous intentionally false representations as averred herein with the specific intent of inducing WCFE to transmit interstate wire transfers to the Co-Conspirators concerning three separate concerts in Washington, Pennsylvania that were scheduled for June 10 and August 12, 2017.

69. Pursuant to and in furtherance of their fraudulent scheme, the Co-Conspirators did in fact induce WCFE to transmit via interstate wire five (5) separate monetary transfers to further the scheme: on February 21, 2017, February 23, 2017, March 9, 2017 (x2), and April 10, 2017, which funds were fraudulently converted by and distributed among and between the Co-Conspirators.

70. The Co-Conspirators willfully and knowingly devised a scheme and artifice to defraud WCFE and to obtain money via wire by false pretenses, representations, promises and assurances.

71. The acts of wire fraud averred herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

72. The Co-Conspirators have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity averred herein, in violation of 18 U.S.C. § 1962(c).

73. As a direct and proximate result of the Co-Conspirators' racketeering activities and violations of 18 U.S.C. § 1962(c), WCFE has been injured in its business and property in an amount in excess $75,000.00.

WHEREFORE, WCFE demands judgment in its favor and against the Co-Conspirators jointly and severally for compensatory, special, consequential, incidental, and reliance damages in an amount in excess of $75,000.00, trebled, attorneys' fees, interest and costs of suit, and all such additional relief that the Court deems necessary and proper.

## COUNT II
## FRAUDULENT MISREPRESENTATION

74. The averments of paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

75. As averred herein, the Co-Conspirators made deliberate misrepresentations to WCFE that they were the designated booking agents and/or management personnel for the artists purportedly booked to perform at the Park; that they were in direct communication with the artists and the artists' management and representatives and able to directly book the artists' appearances at the Park; that they had authority to commit the artists to perform at the Park and execute agreements on their behalf; that they were actively marketing, promoting and otherwise preparing for the June 10 and August 12, 2017 concerts with the artists' full knowledge and authority; and that deposit monies tendered by WCFE for the artists would be paid in full to the artists, all of which was false and calculated to deceive WCFE and induce it to tender the interstate wire payments to the Co-Conspirators.

14

76. The Co-Conspirators' representations were material to the transactions consummated by WCFE, including, without limitation, the completed interstate wire transfers.

77. The Co-Conspirators knew that the representations that they made to WCFE were false.

78. The Co-Conspirators deliberately intended to mislead WCFE into relying upon their active misrepresentations, omissions and concealment.

79. The Co-Conspirators' misrepresentations were done with the intent of inducing, and did in fact induce, WCFE to tender the interstate wire payments which the Co-Conspirators have fraudulently converted and distributed among and between themselves.

80. WCFE justifiably relied to its detriment upon the Co-Conspirators' representations and assurances.

81. The Co-Conspirators acted with malice and reckless indifference to the rights of WCFE.

82. As a direct and proximate result of the Co-Conspirators' fraudulent conduct, WCFE was induced to tender interstate wire payments to the Co-Conspirators, which they have failed and refused to refund in full.

83. As a direct and proximate result of the Co-Conspirators' fraudulent conduct, WCFE has and will continue to sustain damages in excess of $75,000.00.

WHEREFORE, WCFE demands judgment in its favor and against the Co-Conspirators jointly and severally for compensatory, special, consequential, incidental, and reliance damages in an amount in excess of $75,000.00, restitution, punitive damages, interest and costs of suit, and all such additional relief that the Court deems necessary and proper.

## COUNT III
## CONVERSION

84. The averments of paragraphs 1 through 83 are incorporated by reference as if fully set forth herein.

85. The Co-Conspirators have unlawfully converted, and attempted to further convert, for their own use, the interstate wire payments tendered by WCFE.

86. The Co-Conspirators have unlawfully exercised dominion and control over the unrefunded wired monies, preventing WCFE from using the funds consistent with its ownership thereof.

87. The taking and retention of the wired funds constitutes an unlawful conversion by the Co-Conspirators.

88. The Co-Conspirators acted with malice and reckless indifference to the rights of WCFE.

89. As a direct and proximate result of the Co-Conspirators' tortious conduct, WCFE has sustained and will continue to sustain damages in excess of $75,000.00.

WHEREFORE, WCFE demands judgment in its favor and against the Co-Conspirators jointly and severally for compensatory, special, consequential, incidental, and reliance damages in an amount in excess of $75,000.00, restitution, punitive damages, interest and costs of suit, and all such additional relief that the Court deems necessary and proper.

## COUNT IV
## UNJUST ENRICHMENT

90. The averments of paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

91. WCFE conferred a benefit on the Co-Conspirators in the form of the unrefunded interstate wire payments.

92. The Co-Conspirators have wrongly accepted, appreciated and retained the unrefunded wired funds.

93. Through their tortious conduct as averred herein, the Co-Conspirators wrongly secured and retained the interstate wire payments tendered by WCFE.

94. The Co-Conspirators have been unjustly enriched through their wrongful retention of the wired funds tendered by WCFE.

95. Under the circumstances, it is inequitable for the Co-Conspirators to retain the wired funds tendered by WCFE, either in whole or in part.

96. As a direct and proximate result of the Co-Conspirators' unlawful conduct, WCFE has sustained and will continue to sustain damages in excess of $75,000.00.

WHEREFORE, WCFE demands judgment in its favor and against the Co-Conspirators jointly and severally for compensatory, special, consequential, incidental, and reliance damages in an amount in excess of $75,000.00, restitution, interest and costs of suit, and all such additional relief that the Court deems necessary and proper.

## COUNT V
## CIVIL CONSPIRACY

97. The averments of paragraphs 1 through 96 are incorporated by reference as if fully set forth herein.

98. As averred herein, the Co-Conspirators combined and agreed with a common, intentional and unlawful purpose designed to defraud WCFE, and to induce it to tender interstate wire payments to the Co-Conspirators for the purportedly booked, scheduled and promoted concerts that were nothing more than a sham.

99. As averred herein, the Co-Conspirators performed numerous overt acts in pursuance of their intentional civil conspiracy to defraud WCFE.

100. In colluding to defraud WCFE, the Co-Conspirators acted with malice and reckless indifference to the rights of WCFE, and without justification.

101. As a direct and proximate result of the Co-Conspirators' unlawful conduct, WCFE has and will continue to sustain damages in an amount in excess of $75,000.00.

WHEREFORE, WCFE demands judgment in its favor and against the Co-Conspirators jointly and severally for compensatory, special, consequential, incidental, and reliance damages in an amount in excess of $75,000.00, restitution, punitive damages, interest and costs of suit, and all such additional relief that the Court deems necessary and proper.

Dated: July 31, 2017

Respectfully Submitted,

FARNETH TOMOSOVICH, LLC

By:     /s/ *Ryan James*
    Ryan James (Pa. I.D. #82799)
    Shane D. Valenzi (Pa. I.D. #322025)

    *Attorneys for Plaintiff Washington County Family Entertainment, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within Amended Complaint was served pursuant to Federal Rule of Civil Procedure 5 as follows:

RNN Entertainment Inc.
570 Lefferts Avenue, Apartment 4E
Brooklyn, NY 11203

Romel Marcus
570 Lefferts Avenue, Apartment 4E
Brooklyn, NY 11203

Derrick Robinson
570 Lefferts Avenue, Apartment 4E
Brooklyn, NY 11203

Bodie Entertainment
71 South Orange Avenue, Suite 318
South Orange, NJ 07079

Gustav Heningburg II
27 Burnett Avenue
Maplewood, NJ 07040

Dated: July 31, 2017

FARNETH TOMOSOVICH, LLC

By:    /s/ *Ryan James*
Ryan James (Pa. I.D. #82799)

*Attorneys for Plaintiff Washington County Family Entertainment, LLC*