# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WASHINGTON COUNTY FAMILY
ENTERTAINMENT, LLC,

     Plaintiff,

     v.

RNN ENTERTAINMENT INC.; ROMEL
MARCUS; DERRICK ROBINSON; BODIE
ENTERTAINMENT, INC. a/k/a THE BODIE
GROUP; GUSTAV HENINGBURG II;
JAMES G. EVANS; FRANCESCO CINA;
MING AND SONS, LLC; GOODLIFE
ENTERTAINMENT L.L.C.; JOHN
WARDLOW, JR.; THE RTD GROUP, LLC;
OLUREMI DARAMOLA; SELOMON
GOITOM; and JOHN AND JANE DOES 1
through 10,

     Defendants.

CIVIL ACTION NO. 2:17-cv-807

Magistrate Judge Cynthia Reed Eddy

## RICO CASE STATEMENT

Pursuant to Local Rule 7.1.B of the United States District Court for the Western District of Pennsylvania, Plaintiff Washington County Family Entertainment, LLC ("WCFE"), by and through its attorneys, hereby submits this RICO Case Statement.  WCFE reserves the right to amend this Statement as additional information is learned and discovery is obtained.

    1.    State whether the alleged unlawful conduct is in violation of any or all of the provisions of 18 U.S.C. §§ 1962(a), (b), (c) or (d).

**Defendants' unlawful conduct violates, at a minimum, 18 U.S.C. § 1962(c).**

    2.    List each defendant and state the alleged misconduct and basis of liability of each defendant.

1

RNN Entertainment, Inc. ("RNN") – among other unlawful acts, and in conjunction with Bodie Entertainment, Inc. ("Bodie"), falsely represented itself to be the booking agent for various musical acts, including Wiz Khalifa, Lil Uzi Vert and Skrillex; solicited and received at least $324,000 in interstate wire payments obtained through its repeated fraudulent actions.

Romel Marcus ("Marcus") – as the principal and, upon information and belief, the sole member of the dissolved business entity RNN., Marcus is personally liable for the wrongful and fraudulent acts of RNN to the extent that RNN is a mere alter-ego of Marcus and to the extent that Marcus' fraudulent conduct and solicitation of interstate wire funds occurred in an individual, rather than a corporate, capacity.

Derrick Robinson ("Robinson") – agent of RNN, actively participated in the fraud and deception of WCFE in representing that RNN and Bodie were the booking agents for the various music artists and in soliciting fraudulent interstate wire transfers from WCFE to RNN and Bodie (including via Ming & Sons, Inc.).   Additional details concerning Robinson's involvement will be obtained through discovery.

Bodie Entertainment, Inc. – falsely represented itself to be the booking agent for various musical acts in conjunction with RNN, including Wiz Khalifa, Lil Uzi Vert and Skrillex; solicited and received at least $324,000 in interstate wire payments obtained through its repeated fraudulent actions.

Gustav Heningburg II ("Heningburg") – as the principal and, upon information and belief, the sole member of Bodie, Heningburg is personally liable for the wrongful and fraudulent acts of Bodie to the extent that Bodie is a mere alter-ego of Heningburg and to

the extent that Heningburg's fraudulent conduct and solicitation of interstate wire funds occurred in an individual, rather than a corporate capacity.

James G. Evans ("Evans") – along with Francesco Cina ("Cina"), made and facilitated contact between WCFE and RNN. Marcus, Robinson, Heningburg, Bodie, Goodlife Entertainment, Inc. ("Goodlife"), John Wardlow, Jr. ("Wardlow"), The RTD Group, LLC ("RTD"), Oluremi Daramola ("Daramola"), and Selomon Goitom ("Goitom"); met in person with WCFE on multiple occasions to perpetrate the fraudulent scheme among and  between the Co-conspirators; fraudulently represented to WCFE that he had met with management for the musical artists regarding technical riders and production costs; acted as "communicator" for the Co-Conspirators, and the point of contact between WCFE and the Co-Conspirators.  Also represented to WCFE that he and Cina were actively engaged in negotiating, creating, and promoting a third concert featuring G-Eazy scheduled for June 10, 2017, including meeting with Daramola and Goitom in Palm Springs, California in connection with and furtherance of the fraudulent enterprise.  Evans also exploited his connections with the family of the principal of WCFE to ingratiate himself with WCFE and earn the company's trust with the successful objective of inducing WCFE to wire money across state lines to the Fraudulent Enterprise on multiple occasions based on false representations that the Co-Conspirators could book the music artists for three separate summer concerts.

Francesco Cina – along with Evans, made and facilitated contact between WCFE and RNN. Marcus, Robinson, Heningburg, Bodie, Goodlife, Wardlow, RTD, Daramola, and Goitom; met in person with WCFE on multiple occasions to perpetrate the fraudulent scheme among the Co-Conspirators; fraudulently represented to WCFE that he had met

with management for the music artists regarding technical riders and production costs; acted as "promoter" for the scheme, working to obtain sponsorship money under false pretenses.   Also represented to WCFE that he and Evans were actively engaged in negotiating, creating, and promoting a third concert featuring G-Eazy scheduled for June 10, 2017, including meeting with Daramola and Goitom in Palm Springs, California in connection with and furtherance of the Fraudulent Enterprise.

Ming and Sons LLC – accepted at least $286,500.00 via interstate wire transfers from WCFE as a partial payment for the purported Wiz Khalifa, Lil Uzi Vert and Migos/Skrillex "concerts."   Ming and Sons has no legal connection to any of the other defendants, and functioned as a money-laundering front for the criminal enterprise.

Goodlife Entertainment LLC – along with Wardlow, helped RNN, Marcus and Robinson cover their tracks by misrepresenting to WCFE that Lil Uzi Vert was scheduled to perform at the Park on June 10, 2017.  In reality, after obtaining part of the wired funds tendered by WCFE, which funds were earmarked for the music artists only, Wardlow and Goodlife attempted to secure Lil Uzi Vert for the alleged concert under an arrangement that would pay Goodlife and Wardlow a $40,000.00 kickback.  The Co-Conspirators did not disclose this arrangement to WCFE.

John Wardlow, Jr. – along with Goodlife, helped RNN, Marcus and Robinson cover their tracks by misrepresenting to WCFE that Lil Uzi Vert was scheduled to perform at the Park on June 10, 2017.  In reality, after obtaining part of the wired funds tendered by WCFE, which funds were earmarked for the music artists only, Wardlow and Goodlife attempted to secure Lil Uzi Vert for the alleged concert under an arrangement that would pay Goodlife

and Wardlow a **$40,000.00** kickback.   The Co-Conspirators did not disclose this arrangement to WCFE.

**The RTD Group, LLC** – fraudulently identified itself as representing the musical artist "G-Eazy" and fraudulently represented to WCFE that it had authority to, and did in fact, book the artist to perform at WCFE's Park on June 10, 2017.  Received at least $75,000 via interstate wire transfer from WCFE under fraudulent pretenses as a deposit for the G-Eazy concert that WCFE was led to believe would take place on June 10, 2017.

**Oluremi Daramola** – principal of RTD; met with Evans and Cina in furtherance of the fraudulent scheme to deprive WCFE of funds by pretending to represent G-Eazy for a concert the defendants would lead WCFE to believe would be scheduled for June 10, 2017.

**Selomon Goitom** – fraudulently represented himself to be a member of G-Eazy's management personnel, contributed to the fraudulent scheme by representing that G-Eazy was booked to perform at WCFE's Park on June 10, 2017.

3.     List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each.

**John Does #1-10** each participated to varying degrees in the fraudulent conduct regarding both predicate act concerts; solicited, received, and/or transferred the payments wired from WCFE to the named defendants; and/or participated in the planning, formation, and/or structure of the Fraudulent Enterprise.  The identities of John Does #1-10, and the extent of those fictional defendants' involvement in the Fraudulent Enterprise, will be clarified as discovery progresses.

4.     List the alleged victims and state how each victim has been allegedly injured.

**WCFE has suffered a monetary loss of at least $324,000 in wire transfers made and/or otherwise distributed to the defendants.  WCFE has also suffered a myriad of consequential, incidental and reliance damages in planning for multiple concerts, including security, facilities, publicity, ticketing, and staffing expenses, refunded ticket sales, and a loss of reputation in the community.**

5.     Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:

a.     A list of the alleged predicate acts and the specific statutes which were allegedly violated;

b.     The date of each predicate act, the participants in each such predicate act and the relevant facts surrounding each such predicate act;

c.     The time, place and contents of each alleged misrepresentation, the identity of persons by whom and to whom such alleged misrepresentation was made and if the predicate act was an offense of wire fraud, mail fraud or fraud in the sale of securities. The "circumstances constituting fraud or mistake" shall be stated with particularity as provided by Fed. R. Civ. P. 9(b);

d.     Whether there has been a criminal conviction for violation of any predicate act and, if so, a description of each such act;

e.     Whether civil litigation has resulted in a judgment in regard to any predicate act and, if so, a description of each such act;

f.     A description of how the predicate acts form a "pattern of racketeering activity."

**WCFE incorporates by reference the factual averments set forth in the Amended Complaint.  In addition to those averments, WCFE avers as follows:**

6

**a) 3 separate acts of interstate wire fraud – 18 U.S.C. § 1343**

**b) & c) Following an introduction to WCFE via persons known and trusted by WCFE, Evans and Cina reached out to WCFE on January 3, 2017 and proposed the idea of scheduling certain live music concerts at the Park.  Later in January 2017, Evans and Cina met with WCFE at the Park to assess the suitability of the venue and to further discuss the possibility of scheduling, promoting and producing concerts at the Park.  Evans and Cina both represented to WCFE that they were interested in facilitating the concerts as a business development opportunity and to build "sweat equity," and would be paid for their services if, and only if, the concerts were profitable.  Evans and Cina advised WCFE that Heningburg was uniquely qualified to book the talent and produce the concerts given his industry contacts and significant experience producing hundreds of shows.  Cina informed WCFE that he had worked extensively with Heningburg in the past.**

In early February 2017, Evans, Cina and Heningburg met with WCFE in Allegheny and Washington Counties, Pennsylvania, to provide Heningburg with a tour of the Park and for Heningburg to explain the booking, promotion and production strategy for the concerts. During the February meeting, Heningburg represented to WCFE that he was a well-connected concert producer and a booking agent for numerous artists whom Heningburg would be able to directly secure to perform the shows at the Park.  At the meeting, Heningburg specifically proposed the performances of Wiz Khalifa and Lil Uzi Vert at the Park.  Heningburg further represented that he had already spoken with Wiz Khalifa who, Heningburg said, wanted to do the show as a "homecoming."

As a condition to Heningburg securing Wiz Khalifa and Lil Uzi Vert, Heningburg required WCFE to pay the sum of $75,000.00 for the scheduled concert.  The $75,000.00 fee

was all-inclusive and designed to cover all costs associated with securing the artists, promoting the concert, and supplying production services on the day of the show.

On February 16, 2017, WCFE received from Evans via email a purported "Artist Performance Agreement" for the Wiz Khalifa and Lil Uzi Vert concert at the Park on June 10, 2017.  Also on February 16, 2017, WCFE received from Bodie an invoice in the amount of $75,000.00 for its services to be rendered in connection with the scheduled Wiz Khalifa and Lil Uzi Vert concert.

WCFE wired Bodie the sum of $37,500.00 on February 21, 2017 across state lines, which was intended to cover one-half of the agreed upon costs for booking, promotion, and day-of-concert production services related to the June 10, 2017 concert.  Though Heningburg protested that only half of $75,000.00 was paid for the Wiz Khalifa and Lil Uzi Vert concert, WCFE responded that the remaining $37,500.00 would be paid on the day of the show, provided all services were rendered.

In connection with the purported Wiz Khalifa/Lil Uzi Vert Artist Performance Agreement memorializing the first set of fraudulent occurrences of the Fraudulent Enterprise, RNN, Marcus and Robinson represented to WCFE that they were the designated agents and representatives for Wiz Khalifa and Lil Uzi Vert, and that they had the full right, power and authority to enter into the agreement and to cause the artists to perform all the services required under the agreement, including, without limitation, their appearance and performance at the Park on June 10, 2017.

On February 22, 2017, the cover sheet to the purported Wiz Khalifa/Lil Uzi Vert Artist Performance Agreement was modified to indicate that the contract was by and between Wiz Khalifa and Lil Uzi Vert, through their designated agent and representative

RNN, and Bodie.  The cover sheet was further modified to require that all deposit payments be wired to the account of Ming.  During this time frame, Evans represented to WCFE that he had been in contact with the artists' management concerning the purported Wiz Khalifa/Lil Uzi Vert Artist Performance Agreement and related technical riders, the production costs for the June 10, 2017 concert, and wire account information.  Evans also informed WCFE that he had spoken with Wiz Khalifa directly regarding the June 10, 2017 concert.

On February 23, 2017, WCFE wired to the Co-Conspirators (via Ming) the sum of $111,500.00 across state lines as a deposit for the Wiz Khalifa and Lil Uzi Vert concert scheduled for June 10, 2017; WCFE was led to believe and understood at the time that this payment would be forwarded in its entirety to the artists for their appearances at the Park on June 10, 2017.  However, upon information and belief, the $111,500.00 tendered by WCFE was instead fraudulently converted by and distributed among and between the Co-Conspirators.

Upon information and belief, after receiving the $111,500.00, and because RNN, Marcus and Robinson did not in fact have an agreement from Wiz Khalifa or Lil Uzi Vert to perform at the Park, they contacted Wardlow and Goodlife and enlisted their assistance to perpetuate, aid and abet the fraudulent scheme.  Wardlow and Goodlife helped RNN, Marcus and Robinson cover their tracks by misrepresenting to WCFE that it had secured Lil Uzi Vert to perform at the Park on June 10, 2017.  In reality, after obtaining part of the $111,500.00 tendered by WCFE, which funds were earmarked for the artists only, Wardlow and Goodlife attempted to secure Lil Uzi Vert for the alleged concert under an arrangement

that would pay Goodlife and Wardlow a $40,000.00 kickback.  The Co-Conspirators did not disclose this arrangement to WCFE.

In early March 2017, Evans, Cina, Heningburg, RNN, Marcus and Robinson represented to WCFE that they had a special relationship with Migos and had knowledge of an agreement between Migos and Skrillex under which these artists agreed to perform concerts together.  Evans, Cina, Heningburg, RNN, Marcus and Robinson further stated to WCFE that both Migos and Skrillex agreed to perform at the Park on August 12, 2017, and that they would be able to produce significant sponsorships for the concert, as well as an agreement to live stream the show.

On March 6, 2017, WCFE received from Evans via email a purported "Artist Performance Agreement" for a Migos and Skrillex concert at the Park on August 12, 2017. In connection with the purported Migos/Skrillex Artist Performance Agreement memorializing the second set of fraudulent occurrences of the Fraudulent Enterprise, RNN, Marcus and Robinson represented to WCFE that they were the designated agents and representatives for Migos and Skrillex, and that they had the full right, power and authority to enter into and perform the agreement and to cause the artists to perform all the services required under the agreement, including, without limitation, their appearance and performance at the Park on August 12, 2017.  Bodie then submitted an invoice to WCFE and WCFE wired Bodie the sum of $37,500.00 across state lines on March 9, 2017, with the understanding that the remaining $37,500.00 would be paid on the day of the show, provided all services were rendered.

On March 9, 2017, WCFE wired to the Co-Conspirators (via Ming) the sum of $175,000.00 across state lines as a deposit for the Migos and Skrillex concert at the Park on

August 12, 2017; WCFE was led to believe and understood at the time that this payment would be forwarded in its entirety to the artists for their appearance at the Park on August 12, 2017. However, upon information and belief, the $175,000.00 tendered by WCFE was instead converted by and distributed among and between the Co-Conspirators.

Reasonably relying upon Evans, Cina, Heningburg, RNN, Marcus, Robinson, Wardlow and Goodlife's numerous representations, reasonably believing that it had secured the artists to perform, and having tendered the required deposits, WCFE moved forward with preparations for the June 10 and August 12, 2017 events at the Park with substantial expenditures of time and money. As WCFE was preparing for the shows, Evans and Cina repeatedly assured WCFE that Wiz Khalifa, Lil Uzi Vert, Migos and Skrillex were under contract for the scheduled concerts at the Park. In February and March 2017, Evans, Cina, RNN, Marcus and Robinson led WCFE to believe, and WCFE reasonably believed, that they were actively marketing, promoting and otherwise preparing for the June 10 and August 12, 2017 concerts with the artists' full knowledge and authority.

On March 14, 2017, after tickets were on sale, WCFE was advised by WME Entertainment, LLC ("WME") that it was the sole and exclusive agent for Wiz Khalifa and that neither WME nor Wiz Khalifa had authorized the June 10, 2017 engagement and that the artist would not be appearing for the scheduled concert at the Park. The Co-Conspirators explained to WCFE that it had an agreement for Wiz Khalifa's performance at the Park, and that WME's letter was prompted by its territorial jealousy and lack of a commission on the show. However, WCFE was further advised by the Co-Conspirators that they would obtain a return of its deposit money for the Wiz Khalifa concert because the artist was experiencing certain significant personal issues which put his appearance at the Park in

jeopardy.  The Co-Conspirators further represented to WCFE that they were in a position to secure a superior replacement act to perform at the Park – G-Eazy.

On March 27, 2017, Evans advised WCFE that Daramola informed Evans that G-Eazy was available to perform at the Park on June 10, 2017.  Evans indicated to WCFE that he was negotiating directly with Daramola, who was a member of G-Eazy's management team and authorized to book him for a concert on June 10, 2017.  On April 4, 2017, Evans furnished WCFE with artwork for G-Eazy's June 10, 2017 performance at the Park, which he represented was approved by G-Eazy.

On April 6, 2017, WCFE received from Evans a purported "Artist Engagement Contract" for the G-Eazy concert at the Park on June 10, 2017, which identified RTD as the purchaser of the talent with the authority to bind G-Eazy.  Evans informed WCFE that RTD was Daramola's company and that it had authority to enter into the agreement on G-Eazy's behalf, and he facilitated negotiations for the purported contract with RTD and Daramola. In connection with the G-Eazy Artist Engagement Contract memorializing the third set of fraudulent occurrences of the Fraudulent Enterprise, RTD and Daramola represented to WCFE that they had full authority to furnish the entertainment services of G-Eazy and to bind him to an agreement to perform the engagement at the Park on June 10, 2017.

After receiving wiring instructions from RTD, WCFE wired to RTD the sum of $75,000.00 across state lines on April 10, 2017 as a deposit for the G-Eazy concert at the Park on June 10, 2017.  WCFE was led to believe and understood at the time that this payment would be forwarded in its entirety to the artist for his appearance at the Park on June 10, 2017.  However, upon information and belief, the $75,000.00 tendered by WCFE was instead fraudulently converted by and distributed among and between the Co-Conspirators.

After the wire transfer was tendered, Evans and Cina represented to WCFE that they were actively engaged in creating and pursuing a promotional and marketing timeline for G-Eazy's scheduled performance at the Park on June 10, 2017.  During the weekend of April 14 through 16, 2017, and purportedly at the invitation of G-Eazy's management, Cina and Evans travelled to Palm Springs, California allegedly to continue planning G-Eazy's June 10th performance by meeting in person with Daramola, Goitom, G-Eazy and other members of his management team.  During the trip, Goitom was identified as a key member of G-Eazy's management personnel.

Following the trip, Cina and Evans represented to WCFE that they had met with G-Eazy's management representatives – including Daramola and Goitom – to discuss the scheduled June 10, 2017 performance, and that they repeatedly confirmed that G-Eazy was booked to perform at the Park.  On and after April 17, 2017, Evans requested numerous delays of the ticket on-sale date for the G-Eazy show without detailed explanation. On May 1, 2017, Evans eventually informed WCFE that G-Eazy's management requested that ticket sales begin on May 2, 2017.  Mere hours later, however, WCFE was contacted by Evans and told that G-Eazy's management had cancelled his appearance at the Park on June 10, 2017.

On May 4, 2017, Evans forwarded a letter to WCFE which purported to be a letter from The Revels Group, LLC ("TRG"), G-Eazy's talent management firm, allegedly confirming that G-Eazy would not be appearing on June 10, 2017 "due to irreconcilable differences with Management and His Booking agent[.]"  WCFE subsequently learned that neither TRG, G-Eazy, nor his exclusive agent (United Talent Agency) had authorized either RTD, Daramola, or Goitom to negotiate or enter into any agreement or other arrangement with WCFE for G-Eazy's performance at the Park.

By May 24, 2017, artist approval of the artwork for the Migos and Skrillex concert was required to have been obtained by Evans and Cina so that tickets for the August 12, 2017 concert could be put on sale.  However, Evans and Cina failed to furnish WCFE with the artists' approval, and WCFE was advised by Paradigm Talent Agency ("Paradigm") that it was the sole and exclusive agent for Skrillex and that neither Paradigm nor Skrillex had authorized the August 12, 2017 engagement and that the artist would not be appearing for that concert at the Park.

WCFE was then forced to cancel the June 10 and August 12, 2017 concerts thereby incurring substantial losses and damages.

Given the forced cancellation of the concerts purportedly secured, promoted, and marketed by the Co-Conspirators, WCFE demanded from the Co-Conspirators a full refund of all wired monies, which demand has been refused; instead, the Co-Conspirators have specifically advised WCFE that they intend to keep the funds wired by WCFE.

d) No criminal convictions have resulted to date from the above-described activities

e) No civil actions have resulted in judgments against any of the defendants to date from the above-described activities

f) See response to questions 6 and 7 below.

6.     State whether the alleged predicate acts referred to above relate to each other as part of a common plan, and, if so, describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

a.     The names of each individual partnership, corporation, association or other legal entity which allegedly constitute the enterprise;

RNN Entertainment, Inc.

**Romel Marcus a/k/a Abdur-Raheem**

**Derrick Robinson a/k/a Derekh-Ha Yashar Uriyah**

**Bodie Entertainment, Inc.  a/k/a The Bodie Group**

**Gustav Heningburg II**

**James G. Evans**

**Francisco Cina**

**Ming and Sons, LLC**

**Goodlife Entertainment LLC**

**John Wardlow, Jr.**

**The RTD Group, LLC**

**Oluremi Daramola**

**Selomon Goitom**

**None of the defendants individually constitute the "enterprise" under § 1962(c), as the enterprise is not a legally recognized separate entity, but rather a structured association of individuals and legal entities as described above.**

b. A description of the structure, purpose, function and course of conduct of the enterprise;

**Upon information and belief, the enterprise is not a legally recognized separate entity, but rather a structured association of individuals and legal entities.  The enterprise consists of fraudulent entities prominently including RNN and Bodie Group hold themselves out to be the authorized representatives of certain musical artists with whom they have no connection, for the purpose of convincing venues around the country to plan concerts featuring those artists.  Those venue owners reasonably believe that they are negotiating and**

planning concerts with booking agents of the artists, when in fact the groups and individuals associated with the enterprise are *not* the authorized representatives of any of the artists they purport to represent.  Instead, individuals such as Evans and Cina meet with potential venue owners to sell them on the idea of one or more concert events, then connect those individuals to purported "booking" agents such as Heningburg, Marcus, Robinson, Wardlow, Daramola, and Goitom (and companies associated with those individuals), who contribute to the scheme by claiming to bind certain musical artists (whom they do not, in reality, have any authorization to represent) to contracts to perform at the venue.  The "booking" and "concert promoting" enterprise proceeds by obtaining advance payments from the venue, selling tickets, and purportedly soliciting corporate sponsorships, then, at a date close to the performance, cancelling without warning.  Ideally, the promoters will suggest a "replacement" artist, thereby earning multiple payments for the enterprise for the same concert date for which the venue has already invested substantial expenditures of time and money; that artist, too, will "cancel" at the last moment, leaving the venue operator with no concert.  The substantial up-front payments are retained and split among the enterprise participants, in amounts to be determined through discovery.

      c.      Whether each defendant is an employee, officer or director of the alleged enterprise; As the enterprise is not a legally distinct entity, no defendants are employees, officers, or directors of the enterprise itself.  However, on information and belief, Marcus is an officer and director of RNN; Heningburg is an officer and director of Bodie; Wardlow is an officer and director of Goodlife; and Daramola is an officer and director of RTD.  Upon information and belief, each of those business entities are alter-egos of the individual defendants to which they are associated.

d.      Whether each defendant is associated with the alleged enterprise;

**As explained above, each defendant is associated with the fraudulent enterprise.**

e.      Whether it is alleged that each defendant is an individual or entity separate from the alleged enterprise, or that such defendant is the enterprise itself, or a member of the enterprise; and

**None of the defendants individually constitute the "enterprise" under § 1962(c), as the enterprise is not a legally recognized separate entity, but rather a structured association of individuals and legal entities as described above.  Thus, each defendant is an individual or entity separate from the enterprise.**

f.      If any defendant is alleged to be the enterprise itself, or a member of the enterprise, an explanation whether each such defendant is a perpetrator, passive instrument or victim of the alleged racketeering activity.

**Each defendant is a perpetrator of the racketeering activity.  Upon information and belief, victims (or at least passive instruments) of the enterprise may include some of the artists and/or their managers and agents.**

7.      State and describe in detail whether it is alleged that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

**The pattern of racketeering activity and the enterprise have merged into one entity, in that, on information and belief, RNN and Bodie are *not* the authorized representatives of any of the musical artists whom they purported to represent, and instead have affiliated with individuals such as Heningburg, Marcus, and Robinson to attract potential victims as "representatives" of the enterprise and convince those victims to utilize their services in "booking" musical artists they have no ability or right to represent.  The "booking" and**

"concert promoting" enterprise, therefore, has merged into a racketeering scheme designed to swindle organizations wishing to book well-known musical artists into tendering substantial up-front payments, at which point the artists (who may or may not be aware of the scheme's existence) decline to perform, with the enterprise's participants retaining the entirety or most of the fees.

8.    Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

The enterprise drafts and "negotiates" purported contracts on behalf of performers they falsely claim to represent to ostensibly perform in concert venues nationwide. After initial contact is made by a representative of the enterprise, the representative will issue false, fraudulent contracts between the victims and RNN, Bodie, or both, or others, for specific named performers to perform allegedly planned concert events. RNN and Bodie and others then issue the victims separate invoices and, after receiving up-front payments, cancel the shows and refuse to refund the money, or issue partial refunds but keep the remainder. The act of soliciting interstate wire transfers under false pretenses constitutes a pattern of racketeering activity under the provisions of the RICO Act.

9.    Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

Upon information and belief, the Fraudulent Enterprise is funded entirely by fraudulent wire transfers which constitute a pattern of racketeering under the RICO Act.

10.    Describe the effect of the activities of the enterprise on interstate or foreign commerce.

**The Fraudulent Enterprise claims to represent artists residing in various states in negotiating, scheduling, promoting and producing live concert performances across the United States – including, in this case, Washington County, Pennsylvania.  The Fraudulent Enterprise itself is based in New York, New Jersey, Nevada and California, and the Fraudulent Enterprise is funded by fraudulent interstate wire transfers, which in this case originated in Pennsylvania with final destinations of at least New York, New Jersey, Nevada and California.**

11.     If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

a.     The recipient of the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

b.     A description of the use or investment of such income.

**n/a**

12.     If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

**n/a**

13.     If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:

a.     The identity of each person or entity employed by, or associated with, the enterprise and

b.     Whether the same entity is both the liable "person" and the "enterprise" under §1962(c).

**RNN Entertainment, Inc. – liable entity.  RNN worked in tandem with, at a minimum, Bodie, Goodlife and RTD; RNN does not appear to constitute the entire enterprise, but rather one of the at least two principals associated with the enterprise.**

**Romel Marcus –liable person.**

**Derrick Robinson – liable person.**

**Bodie Entertainment, Inc. – liable entity.   Bodie worked in tandem with, at a minimum, RNN; Bodie does not appear to constitute the entire enterprise, but rather one of at least two principals associated with the enterprise.**

**Gustav Heningburg II – liable person.**

**James G. Evans – liable person.**

**Francisco Cina – liable person.**

**Ming and Sons, LLC – liable entity.**

**Goodlife Entertainment LLC – liable entity.**

**John Wardlow, Jr. – liable entity.**

**The RTD Group, LLC – liable entity.**

**Oluremi Daramola – liable person.**

**Selomon Goitom – liable person.**

**None of the defendants individually constitute the "enterprise" under § 1962(c), as the enterprise is not a legally recognized separate entity, but rather a structured association of individuals and legal entities as described above.**

14.     If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

**n/a**

15.     Describe the alleged injury to business or property.

**See response to Paragraph 4.**

16.     Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

**The fraudulent solicitation, transmission, and receipt of $324,000 in wire transfers resulting in actual damages suffered by WCFE constitutes at least 3 separate and distinct predicate acts of wire fraud in furtherance of the Fraudulent Enterprise, constituting a violation of 18 U.S.C. § 1962(c).**

17.     List the damages sustained by each plaintiff for which each defendant is allegedly liable.

**See response to Paragraph 4.**

18.     List all other federal causes of action, if any, and provide the relevant statute numbers.

**None as of the filing of the Amended Complaint.**

19.     List all pendent state claims, if any.

**Fraudulent Misrepresentation**

**Conversion**

**Unjust Enrichment**

**Civil Conspiracy**

20.     Provide any additional relevant information that would be helpful to the court in processing the RICO claim.

**Plaintiff reserves the right to supplement this Case Statement as additional relevant information becomes available through discovery.**

Respectfully Submitted,

Dated: August 17, 2017

FARNETH TOMOSOVICH, LLC


By: _____/s/ Ryan James_____
   Ryan James (Pa. I.D. #82799)
   Shane D. Valenzi (Pa. I.D. #322025)

   *Attorneys for Plaintiff Washington*
   *County Family Entertainment, LLC*