IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| WASHINGTON COUNTY FAMILY ENTERTAINMENT, LLC, | ) ) ) | 2:17-CV-00807-CB |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| RNN ENTERTAINMENT INC, ROMEL MARCUS, DERRICK ROBINSON, JOHN AND JANE DOES 1-10,  MING AND SONS, LLC,  GOODLIFE ENTERTAINMENT L.L.C., JOHN WARDLOWJR.,  THE RTD GROUP, LLC, OLUREMI DARAMOLA, SHANE A. HALLS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, Chief United States Magistrate Judge.

### I.    RECOMMENDATION

This civil action was initiated in this court on June 16, 2017, by Plaintiff who is the master tenant of a sporting event and entertainment facility known as Wild Things Park (the "Park"), which is located in Washington County, Pennsylvania.  Plaintiff's complaint sets forth claims to recover amounts paid and expenses incurred from Defendants, who Plaintiff claims engaged in a fraudulent scheme related to booking concerts by hip-hop artists at the Park.  The Second Amended Complaint ("SAC") sets forth two claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) and (d), as well as state law tort claims for fraudulent misrepresentation, conversion, unjust enrichment, and civil conspiracy. (ECF No. 164).

This court has subject matter jurisdiction over the controversy pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1332, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Presently before the court is a partial motion for summary judgment filed by Plaintiff against *pro se* Defendants Romel Marcus and Shane A. Halls.[1]  For the reasons that follow, it is respectfully recommended that Plaintiff's motion be granted.

## II.    REPORT

### a.   Background

Plaintiff Washington County Family Entertainment, LLC, is a limited liability company and the master tenant of the Park.  Defendants are individuals and organizations that Plaintiff contends played a part in an ongoing conspiracy to defraud Plaintiff of money Plaintiff remitted in its efforts to secure several hip-hop artists to perform at the Park.[2]

---

[1] This motion for summary judgment was originally filed against these two defendants, as well as Defendants Bodie Entertainment, Inc. a/k/a The Bodie Group, LLC, Gustav Heningburg II, James G. Evans, and Gannon Wealth Security Partners, LLC.  On January 19, 2022, the District Court entered an order approving the voluntary dismissal of these four defendants. (ECF No. 232).

[2] In addition to those Defendants who have been dismissed voluntarily, Plaintiff obtained default judgments against the following defendants: RNN Entertainment, Inc. ("RNN") (ECF No. 35), Ming & Sons, LLC ("Ming") (ECF No. 52), Goodlife Entertainment, LLC ("Goodlife") (ECF No. 43), John Wardlow, Jr. (ECF No. 42), The RTD Group ("RTD") (ECF No. 74), and Oluremi Daramola (ECF No. 92).  On January 3, 2019, the District Court entered judgment in favor of Plaintiff and against Defendants RNN, Ming, Goodlife, Wardlow, RTD, and Daramola, jointly and severally, in the amount of $1,333,376.40, plus post-judgment interest and attorneys' fees. (ECF No. 130).  In addition, Defendant Salim Goitem was dismissed from this case on September 12, 2018. (ECF No. 99).

Finally, Plaintiff obtained a default judgment against Defendant Derrick Robinson on September 26, 2019. (ECF No. 176). On February 2, 2022, Plaintiff filed a motion for default judgment against Robinson. (ECF No. 237). On February 4, 2022, this Court ordered any Defendant wishing to file a response to this motion to do so by February 14, 2022. (ECF No. 240). Neither Robinson nor any other defendant has responded to that motion; thus, it is ripe for disposition.

The facts relevant to the issues presented in this partial motion for summary judgment are as follows.  "In early February 2017, [some defendants] traveled to Allegheny and Washington Counties, Pennsylvania, and met with [Plaintiff] to propose hosting music concerts at the Park." Pl.'s Concise Statement of Material Facts ("CSF") (ECF No. 226) at ¶ 4.  "On February 16, 2017, [Plaintiff] received from Evans via email a purported 'Artist Performance Agreement' for a Wiz Khalifa and Lil Uzi Vert concert at the Park on June 10, 2017." *Id*. at ¶ 5.  "In the Khalifa/Uzi Vert Agreement, Romel Marcus was specified as the authorized signatory on behalf of Wiz Khalifa and Lil Uzi Vert."[3] *Id*. at ¶ 7.  "Romel Marcus was not an authorized agent for Khalifa or Lil Uzi Vert."[4] *Id*. at ¶ 8.  On February 23, 2017, "pursuant to wire instructions on the Khalifa/Uzi Vert Agreement," Plaintiff "executed a wire transfer in the amount of $111,500.00 to an account at J.P. Morgan Chase Bank, N.A. held by [Ming[5]] (which was operated and controlled by Shane A. Halls) as a deposit for the appearances of Wiz Khalifa and Lil Uzi Vert." *Id*. at ¶ 11.

Similarly, on March 6, 2017, Plaintiff received "a purported 'Artist Performance Agreement' for a Migos and Skrillex concert at the Park on August 12, 2017." *Id*. at ¶ 16.  "In the Migos/Skrillex Agreement, Marcus was specified as the authorized signatory on behalf of Migos and Skrillex." *Id*. at ¶ 18.  "Marcus was not an authorized agent for Migos or Skrillex."[6] *Id*. at ¶ 19.

---

[3] Marcus signed this agreement on behalf of RNN.

[4] Marcus testified at his deposition that as of February 16, 2017, he had no "written agreement" or "written authority" that he was able to act as a "designated agent and representative for Wiz Khalifa." Marcus Depo. (ECF No. 225-4) at 3.  Marcus testified to the same with regard to Lil Uzi Vert. *Id*.

[5] Ming was served on August 3, 2017.  According to the return of service, the summons was sent to and accepted by "Shane A. Halls, who is designated by law to accept service of Process on behalf of Ming & Sons, LLC." Plaintiff obtained a default judgment against Ming on November 13, 2017. (ECF No. 45).

[6] Marcus also testified at his deposition that he had no written authority to enter into an agreement on behalf of Migos or Skrillex. Marcus Depo. (ECF No. 225-4) at 9-10.

Plaintiff executed a wire transfer of $175,000 to the Ming account, which was controlled by Halls. *Id*. at ¶ 24.  Plaintiff later learned that these entities and individuals were not authorized agents for these artists and was forced to cancel these concerts.

This litigation followed, with Plaintiff filing a complaint against Defendants in June 2017, and then the filing of the SAC on August 30, 2019. (ECF Nos. 1, 164).  On October 3, 2019, Marcus filed an answer to the SAC. (ECF No. 178).  In October 2019, Halls filed a motion to dismiss the SAC and declaration in support thereof.  (ECF Nos. 181, 182).  After briefing was completed, on March 6, 2020, this Court filed a report and recommendation recommending, in relevant part, that the motion to dismiss filed by Halls be granted in part and denied in part. (ECF No. 192).   Specifically,  this  Court  recommended  that  Plaintiff's  claim  for  fraudulent misrepresentation against Halls be dismissed, and the motion be denied in all other respects. *Id*. The District Court adopted this Court's report and recommendation on May 4, 2020. (ECF No. 193).  Halls filed an answer to the SAC on June 11, 2020. (ECF No. 196).

Discovery in this matter then commenced, and on December 1, 2021, in compliance with an order of this Court, Plaintiff filed the motion for partial summary judgment at issue here. (ECF No. 225). Plaintiff has moved for summary judgment against Marcus with respect to its claims for conversion, fraudulent misrepresentation, and unjust enrichment.   Plaintiff has moved for summary judgment against Halls with respect to its claims for conversion and unjust enrichment. Marcus has not filed a response.  Halls has filed a brief response.[7]  This matter is now ripe for disposition.

---

[7] In this Court's order scheduling motions for summary judgment, responses to motions for summary judgment were due on January 3, 2022. (ECF No. 222).  On January 6, 2022, this Court entered an order reminding both Halls and Marcus of that date, and extending the time they had to file responses until January 24, 2022.  By mail received by the Court on January 25, 2022, Halls filed a letter stating, "I, Shane Halls[,] put in opposition saying that I merely set up the account

b.  <u>Standard of Review</u>

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co*., 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

---

and that I never handled the wire transfer or received any of the money from any of [the] fraud that they committed." Halls' Resp. (ECF No. 233) at 1.

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

c.   Discussion

This Court will consider Plaintiff's motion for summary judgment filed with respect to each claim: (1) conversion; (2) fraudulent misrepresentation; and (3) unjust enrichment. (ECF No. 225).

i.   *Conversion*

Plaintiff seeks summary judgment against both Marcus and Halls on its claim for conversion.  "Under Pennsylvania law, the tort of conversion is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith without the owner's consent and without legal justification." *Gary Miller Imports, Inc. v. Doolittle*, 2020 WL 7027483, at \*14 (W.D. Pa. 2020) (footnotes omitted).  "Money can be the subject chattel of a conversion claim." *Id.*

According to Plaintiff, "[w]ithout consent or justification, the Co-Conspirators unlawfully exercised dominion and control over the unreturned wired monies, depriving WCFE of its rights in, use and possession thereof."[8] Pl.'s Br. (ECF No. 227) at 11.  Instantly, Plaintiff has established

---

[8] Attached to Plaintiff's motion for summary judgment are a series of bank statements, which provide the following, in relevant part.  Plaintiff "executed a wire transfer in the amount of $111,500" to the Ming account. Pl.'s CSF (ECF No. 226) at ¶ 11.  Dollars from the Ming Account

that it sent money to various bank accounts, including a bank account owned by Ming, which was set up by Halls.[9]  Marcus signed the agreements pursuant to which this money was transferred, and the Defendants were unable to follow through on the concerts provided for in these agreements. Thus, Defendants had no legal justification for failing to return this money. Accordingly, Plaintiff has established the elements of conversion claim against both Marcus and Halls, and it is respectfully recommended that summary judgment be granted in favor of Plaintiff and against Marcus and Halls on the conversion claim.

### ii.   Fraudulent Misrepresentation

Plaintiff contends it is entitled to summary judgment on its fraudulent misrepresentation claim against Marcus.[10] Pl.'s Br. (ECF No. 227) at 16-17.

> To prevail on a claim for fraudulent misrepresentation Plaintiff must establish six elements: 1) a representation, 2) which is material to the transaction at hand, 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, 4) with the intent of misleading another into relying on it, 5) justifiable reliance on the misrepresentation, and 6) the resulting injury was proximately caused by the reliance.

*Weirton Med. Ctr., Inc. v. Cerner Health Servs.*, Inc., 2018 WL 4560737, at *9 (W.D. Pa. 2018). Instantly, Marcus testified at his deposition that he represented that he was an authorized agent for these artists when he did not have authorization to do so.  *See* Marcus Depo. (ECF No. 225-4). Plaintiff has established that it sent money to various bank accounts in reliance upon this agreement, and that money has not been returned to it.  Accordingly, Plaintiff has established the

---

were then transferred to other Defendants. *Id*. at ¶ 12.  Furthermore, on March 9, 2017, Plaintiff transferred $175,000 to the Ming account pursuant to the Migos/Skrillex Agreement. *Id*. at  ¶ 24. Dollars from the Ming Account were then transferred to other Defendants. *Id*. at ¶ 25.   Plaintiff states that these dollars were not returned to it.

[9] Halls admitted that he set up the Ming bank account. *See* Halls' Resp. (ECF No. 233) at 1.

[10] As discussed *supra*, the fraudulent misrepresentation claim against Halls was dismissed.

claim of fraudulent misrepresentation against Marcus; thus, this Court respectfully recommends that summary judgment be granted in favor of Plaintiff and against Marcus on this claim.

### iii.   Unjust Enrichment

Plaintiff contends it is entitled to summary judgment on its unjust enrichment claim against both Marcus and Halls. Pl.'s Br. (ECF No. 227) at 17-18.   Specifically, Plaintiff claims that defendants "retained $259,500.00 paid by [Plaintiff] for concerts that never occurred." *Id*. at 18.

> Unjust enrichment claims under Pennsylvania law fall into one of two categories: (1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim. Under either theory, the requisite circumstances exist to establish that the defendant has been unjustly enriched.

*SodexoMAGIC, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 472 (E.D. Pa. 2018), aff'd in part, vacated in part, remanded, 24 F.4th 183 (3d Cir. 2022) (internal citations and quotation marks omitted).  Here, Plaintiff has not pleaded a breach of contract claim; thus, this Court will consider the second theory of unjust enrichment.

> With respect to the second theory, an unjust enrichment claim may be pled as a companion, not an alternative, to a claim of unlawful or improper conduct as defined by law—e.g., a tort claim. In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched). Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim.

> In other words, unlike the quasi-contract theory of unjust enrichment, which acts as an equitable stand-in for a failed breach of contract claim, an unjust enrichment claim based on wrongful conduct cannot stand alone as a substitute for the failed tort claim.

*Id*. (internal citations and quotations omitted).

In addition to the unjust enrichment claim, Plaintiff has pleaded the tort of conversion against Halls and Marcus and fraudulent misrepresentation against Marcus.  The undersigned has recommended that summary judgment be granted in Plaintiff's favor on those torts, and likewise, the undersigned also recommends summary judgment be granted in favor of Plaintiff on the unjust enrichment claim.

       d.  <u>Conclusion</u>

Based on the foregoing, it is respectfully recommended that Plaintiff's motion for summary judgment be granted, and judgment be entered in favor of Plaintiff and against Marcus and Halls in the amount of $259,500.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until **March 2, 2022,** to file objections to this report and recommendation.  Unless Ordered otherwise by the District Judge, responses to objections are due on **March 16, 2022**.  Failure to file timely objections may constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: February 16, 2022                    Respectfully submitted,

                                            <u>s/ Cynthia Reed Eddy</u>

                                              Chief United States Magistrate Judge

cc:    Honorable Cathy Bissoon

         United States District Judge

         *via electronic filing*

         Counsel of record

         *via electronic filing*

*Pro se* Litigants

DERRICK ROBINSON
570 Lefferts Ave. Apt. 4E
Brooklyn,  NY 11203